**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| KEITH FISHLOCK, on behalf of himself and all others similarly situated, | |
| Plaintiff, | C.A. NO.  23-522-RGA |
| v. | |
| GLOBAL PLASMA SOLUTIONS, INC. | |
| Defendant. | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Dated: July 25, 2023

OF COUNSEL:

Dennis C. Reich
REICH & BINSTOCK LLP
4265 San Felipe, Suite 1000
Houston, TX 77024
Phone: (713) 622-7271
Fax: (713) 623-8724
dreich@reichandbinstock.com

Steffan T. Keeton
THE KEETON FIRM LLC
100 S Commons, Ste. 102
Pittsburgh, PA 15212
1-888-412-5291
stkeeton@keetonfirm.com

Michael A. Mills
THE MILLS LAW FIRM
8811 Gaylord Drive
Suite 200
Houston, TX 77024
Phone: (832) 548-4414
Fax: (832) 327-7443
mickey@millsmediation.com

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 N. Market St., 12th Floor
Wilmington, DE 19801
Phone: (302) 777-0300
Fax: (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Attorneys for Plaintiff and the Classes*

**TABLE OF CONTENTS**

I.    **INTRODUCTION**                                                          1

II.   **ARGUMENT**                                                             2

____A. Plaintiff States a Claim for Fraudulent Concealment.                    2

____B. GPS' Representations and Omissions Are Deceptive.                       4

____C. Implied Warranties Are Properly Pled.                                   6

____D. Claim for Unjust Enrichment is Properly Alleged.                        7

III.  **CONCLUSION**                                                            7

**TABLE OF AUTHORITIES**

<u>Cases</u>

*Bridgestone/Firestone, Inc. v. Cap Gemini Am., Inc.*,
  No. CIV.A. 00C-10-058HDR, 2002 WL 1042089 (Del. Super. Ct. May 23, 2002) .................. 5

*Castrol, Inc. v. Pennzoil Quaker State Co.*, 169 F. Supp. 2d 332 (D.N.J. 2001) ........................... 5

*Coleman Dupont Homsey v. Vigilant Ins. Co.*, 496 F. Supp.2d 433 (D. Del. 2007) ..................... 2

*Earls v. Condor Capital Corp.*, 2001 WL 1188248 (Conn. Super. Ct. Aug. 30, 2001) ................ 7

*F.T.C. v. Johnson*, 96 F. Supp. 3d 1110 (D. Nev. 2015) ................................................... 4

*F.T.C. v. QT, Inc.*, 512 F.3d 858 (7th Cir. 2008) ......................................................... 3

*Freeman v. Hubco Leasing, Inc.*, 324 S.E.2d 462 (Ga. 1985) ........................................... 7

*Giant Food, Inc. v. FTC*, 322 F.2d 977 (D.C. Cir. 1963) ................................................. 4

*In re Milo's Dog Treats Consol. Cases,* 9 F. Supp. 3d 523 (W.D. Pa. 2014) ................................ 5

*JCW Electronics, Inc. v. Garza*, 176 S.W.3d 618 (Tex. App. 2005) ................................... 6

*Jones, Inc. v. W.A. Wiedebusch Plumbing & Heating Co.*, 201 S.E.2d 248 (W. Va. 1973) .......... 6

*Karczewski v. Ford Motor Co.*, 382 F. Supp. 1346 (N.D. Ind. 1974) ........................................... 7

*Lloyd v. Gen. Motors Corp.*, 916 A.2d 257 (Md. 2007) ................................................. 2

*Mintz v. Daimler-Benz of N. Am., Inc.*, 341 N.Y.S.2d 781 (N.Y. Civ. Ct. 1973) ......................... 7

*Nelson v. Wilkins Dodge, Inc.*, 256 N.W.2d 472 (Minn. 1977) ........................................... 7

*Resort Car Rental Sys., Inc. v. FTC*, 518 F.2d 962 (9th Cir. 1975) ................................... 4

*Reynolds v. Preferred Mut. Ins. Co.*, 49 Mass. App. Dec. 97 (Mass. Dist. Ct. 1972) ................... 7

*Shaw v. Brown & Williamson Tobacco Corp.*, 973 F. Supp. 539 (D. Md. 1997) ......................... 2

*Soaper v. Hope Indus., Inc.*, 413 S.E.2d 38 (S.C. Ct. App. 1992) ................................... 6

*Sterling Drug, Inc. v. FTC*, 741 F.2d 1146 (9th Cir. 1984) ........................................... 5

*Stickney v. Fairfield's Motors, Inc.*, 9 U.C.C. Rep. Serv. 236 (N.H. Super. Ct. 1970) .................. 7

*Swedish Civil Aviation Admin. v. Project Mgmt. Enters., Inc.*,
    190 F. Supp. 2d 785 (D. Md. 2002) ................................................................ 2

*Thomas v. Ford Motor Credit Co.*, 429 A.2d 277 (Md. Ct. Spec. App. 1981) ............................. 7

*Tornow v. Stanford Bros., Inc.*, 2005 WL 4135450 (Mich. Cir. Ct. Apr. 21, 2005) ..................... 7

*Towel Mach. Serv. Corp. v. Am. Unif. Rental, Inc.*,
    7 U.C.C. Rep. Serv. 162 (N.Y. Civ. Ct. 1970) ................................................. 7

Statutes

Del. Code Ann. tit. 6, § 2512 ................................................................ 4

Md. Code Ann. Com. Law § 13-105 ............................................................. 4

Rules

Fed. R. Civ. P. 8 ........................................................................... 6

 Other Authorities

R. Nordstrom, Sales § 78 (1970) ............................................................. 6

W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 109 (5th ed.1984) .................. 5

## I.     INTRODUCTION

In 19th century America, peddlers traveled from town to town selling remedies, operating as confidence men, they relied on consumers' trust. Omitting defects and using deceptive claims, these peddlers, sometimes described as snake oil salesmen, took money from buyers relying upon their claims. The salesmen were forced to stay on the run because if they stayed in one place, their trickery would soon be discovered and they would face consequences. Likewise, Defendant uses partial truths, deception, and outright lies in an effort to conceal its defects.

In its Motion, Defendant ("GPS") raises four attacks against the First Amended Complaint (the "Complaint" or "FAC").

First, GPS claims that Plaintiff fails to plead a claim for fraudulent concealment. This fails because Plaintiff outlines a coordinated course of concealing conduct that involves lawsuits to silence detractors, secretly altered devices, deceptively designed tests, and the destruction of evidence.

Second, GPS claims that some of Plaintiff's claims are premised on nonactionable testimonials and puffery. This argument fails because the testimonials that are reproduced on GPS' website and other forms of marketing are actionable, and a review of the law shows that GPS' claims of puffery are not correct.

Third, GPS argues that Plaintiff cannot bring claims under the implied warranty for a particular purpose where there is overlap with its ordinary purpose. However, this argument fails because GPS neglects the Federal Rules of Civil Procedure and well-developed case law where the purposes may overlap.

Fourth, GPS claims that Plaintiff cannot bring a claim for unjust enrichment because he does not show that GPS benefited from his purchase. This fails because Plaintiff bought – rather than stole – the device from an authorized retailer.

Thus, GPS' Motion should be denied.

## II.     ARGUMENT

### A.   Plaintiff States a Claim for Fraudulent Concealment.

Federal courts applying the laws of numerous states, including Delaware, have adopted a relaxed Rule 9(b) standard "in fraudulent concealment cases where the concealment involves omissions of material fact," because "omissions cannot be described in terms of the time, place, and contents of the misrepresentation." *Shaw v. Brown & Williamson Tobacco Corp.*, 973 F. Supp. 539, 552 (D. Md. 1997); *See* also *Coleman Dupont Homsey v. Vigilant Ins. Co.*, 496 F. Supp.2d 433, 439 (D. Del. 2007). The relaxed standard is implemented to offset the difficulties in pleading omissions and concealment "given that omissions cannot be described in terms of the time, place, and contents of a misrepresentation or the identity of the person making the misrepresentation." *Shaw*, 973 F. Supp. at 552. The more relaxed standard still effectuates the key purpose of Rule 9(b) to "provide the defendant fair notice of the basis of plaintiff's claim." *Swedish Civil Aviation Admin. v. Project Mgmt. Enters., Inc.*, 190 F. Supp. 2d 785, 798 (D. Md. 2002). The standard only requires a complaint to be both "thorough" and plead "alleged fraudulent behavior with specificity." *Id.* at 799.

With fraudulent concealment, "the affirmative act on the part of the defendant must be more than mere silence; there must be some act intended to exclude suspicion and prevent injury, or there must be a duty on the part of the defendant to disclose such facts, if known." *Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 275 (Md. 2007). The Complaint alleges GPS' coordinated course of conduct to conceal that its Products are ineffective and fail to conform to their

2

representations. Here, GPS has taken many actions to exclude suspicion and conceal its

deceptive actions including, but not limited to:

- suppressing or altering test results showing negative outcomes for the Products (FAC ¶¶

  142, 146-48);

- filing lawsuits against people and entities alerting the public to the defects to suppress the

  statements. (FAC ¶¶ 123, 143-45);[1]

- designing tests to generate far greater output than achievable in real world settings

  without disclosing (FAC ¶¶ 114, 148); and

- destroying evidence (FAC ¶ 141).

Despite its best efforts to suppress and alter the testing, no outside, independent study can

substantiate GPS' COVID-19 claims. As Chief Judge Easterbrook summarized:

> Although it is true, as Arthur C. Clarke said, that "[a]ny sufficiently advanced technology is indistinguishable from magic" by those who don't understand its principles ("Profiles of the Future" (1961)), a person who promotes a product that contemporary technology does not understand must establish that this "magic" actually works. Proof is what separates an effect new to science from a swindle. Defendants themselves told customers that the [product's] efficacy had been "test-proven"; that statement was misleading unless a reliable test had been used and statistically significant results achieved.

*F.T.C. v. QT, Inc.*, 512 F.3d 858, 862 (7th Cir. 2008).

When GPS knew the Products would be ineffective at eliminating COVID, it designed studies to

manipulate the test results (FAC ¶¶ 114, 148). When the devices proved to be ineffective, GPS

employees modified the devices (FAC ¶¶ 114, 148). When independent voices appeared that

---

[1] To the extent that GPS relies on *Garner* to claim that lawsuits are not an act of concealment, the *Garner* court also stated, "A frivolous lawsuit *could* perhaps be an 'affirmative action,' if its only purpose was to silence detractors." *Garner v. Glob. Plasma Sols. Inc.*, 590 F. Supp. 3d 738, 747 (D. Del. 2022) (emphasis added).

attempted to reveal this information, GPS filed lawsuits to silence its detractors (FAC ¶¶ 123, 143-45). Throughout this process, when concerns appeared that the extent of the fraud would be discovered, GPS destroyed evidence (FAC ¶ 141). Simply, GPS has conducted a coordinated campaign of concealment.

### B.   GPS' Representations and Omissions Are Deceptive.

The DCFA covers not only false representation of facts but also "unfair or deceptive merchandising practices." 6 Del. C. § 2512. Consumer deception statutes like the DCFA are to "be liberally construed and applied to promote its underlying purposes and policies." *Id.*; *see also* Md. Code Ann. Com. Law § 13-105 (statute should "be construed and applied liberally to promote its purpose."). In other words, the DCFA sweeps far more broadly than GPS represents and encompasses conduct that is deceptive while not necessarily being premised on a false statement of fact. Under a deception analysis, representations capable of being interpreted in a misleading way should be construed against the advertiser. *Resort Car Rental Sys., Inc. v. FTC*, 518 F.2d 962, 964 (9th Cir. 1975). Further, a statement or omission may convey more than one reasonable meaning, and if one of those meanings is deceptive, it is an actionable deception. *Giant Food, Inc. v. FTC*, 322 F.2d 977 (D.C. Cir. 1963). At this stage, GPS can only prevail if no reasonable consumer *could* be deceived by its representations and omissions.

GPS contends that many of the statements are "nonactionable" testimonials, but that is not always the case. Testimonials that are presented on its website or rebroadcasted through other marketing and advertising are actionable. *See, e.g.*, *F.T.C. v. Johnson*, 96 F. Supp. 3d 1110, 1150 (D. Nev. 2015). GPS additionally contends that many of the statements are puffery. Puffery concerns "statements [that] embody exaggerations, the truth or falsity of which cannot be determined easily, that amount to no more than an expression of the seller's opinion about the

4

character or quality of the product." *Bridgestone/Firestone, Inc. v. Cap Gemini Am., Inc.*, No. CIV.A. 00C-10-058HDR, 2002 WL 1042089, at *5 (Del. Super. Ct. May 23, 2002). When a seller claims that representations are mere puffery, courts must be cautious. *Id.* "[T]he question of whether a particular statement amounts to an actionable misrepresentation will generally be left to the fact finder." *Id.* (citing W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 109, at 757 (5th ed.1984)).

Whether a statement is labeled puffery or a warranty, requires more than a review of the words used. Rather, the full circumstances of the case must be examined. GPS markets its Products as far superior than other air treatment systems in order to generate sales. However, testing shows that its Products do not work as represented and suffered from undisclosed defects. Additionally, other technologies are at a minimum equally effective and cost less than GPS' products. Therefore, it is deceptive for GPS to claim that it offers superior technology that is "the safest, most effective technology on the market."

Further, this representation is not puffery. When representations are made which may – in isolation – be considered puffery, courts will examine the full context to see if those same statements are considered puffery to the consumer. *See In re Milo's Dog Treats Consol. Cases,* 9 F. Supp. 3d 523, 532 (W.D. Pa. 2014) (finding that "good for pets" may be puffery by itself, but even if it is, it contributes to the deceptive context as a whole, and as such cannot be divorced from other specific deceptive representations); *Sterling Drug, Inc. v. FTC*, 741 F.2d 1146, 1151 (9th Cir. 1984) (claims of better purity, stability, and speed of disintegration than competition are not puffery).GPS also claims that its Product makes "cleaner air." However, "cleaner" is not puffery. *Castrol, Inc. v. Pennzoil Quaker State Co.*, 169 F. Supp. 2d 332, 336 (D.N.J. 2001).

5

While GPS attempts to label its numerous statements as "nonactionable," that is not the case because the statements are not puffery and testimonials reproduced by GPS are actionable.

### C.   Implied Warranties Are Properly Pled.

At this stage, Plaintiff may seek claims premised on the Product's particular purpose as well as its ordinary purpose. Under Federal Rule of Civil Procedure 8(d)(2), "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones." Fed. R. Civ. P. 8.  Rule 8(d)(3) explicitly allows Parties to plead inconsistent claims. Plaintiff is entitled to plead both implied warranty claims in the alternative.

Further, UCC §§ 2-315, which underpins the laws of Delaware, is to be liberally construed and administered to promote its underlying purpose. U.C.C. §§ 1-103 (a); U.C.C. §§ 1-305. Consistent with these principles, courts have applied UCC 2-315 where the buyer's purchase is the ordinary purpose for the goods. In other words, courts allow claims where there is an overlap of the ordinary and particular purposes. For example, in *Thomas v. Ford Motor Credit Co.*, the court found that a vehicle also had a particular purpose for driving on the road. 429 A.2d 277 (Md. Ct. Spec. App. 1981). [2] The following purchases have been found to involve a particular purpose under Section 2-315:

---

[2]  *Soaper v. Hope Indus., Inc.*, 413 S.E.2d 38 (S.C. Ct. App. 1992) ("where the particular purpose for which a product is purchased is also the ordinary or intended use of the product, the warranties of merchantability and of fitness merge and are cumulative, and the plaintiff may proceed on either theory."); *JCW Electronics, Inc. v. Garza*, 176 S.W.3d 618 (Tex. App. 2005) (telephone for unattended use by jail inmates), *rev'd on other grounds*, 257 S.W.3d 701 (Tex. 2008); *Jones, Inc. v. W.A. Wiedebusch Plumbing & Heating Co.*, 201 S.E.2d 248 (W. Va. 1973) (sprinkler heads to discharge in case of fire but not otherwise); R. Nordstrom, Sales § 78 (1970) ("if the buyer's use of the goods is the ordinary purpose of those goods, . . . the buyer's particular purpose coincides with the ordinary use of the goods and either section 2-314 [the implied warranty of merchantability] or section 2-315 [the implied warranty of fitness for a particular purpose] will give the buyer the protection he needs").

- A used car for transportation on the roads;[3]
- Gutters on a house to maintain the house in good condition;[4]
- Lockers for employees to store personal belongings;[5] and
- A car radio to receive radio broadcasts.[6]

At this stage, Plaintiff is entitled to seek claims premised on a theory that the Product failed both the implied warranty of merchantability and the implied warranty for a particular purpose.

### D. Claim for Unjust Enrichment is Properly Alleged.

GPS was conferred a monetary benefit because Plaintiff purchased the Product. Plaintiff pleads that the funds used for the purchase were received by GPS through the distribution and sale of the Product. FAC ¶¶ 256-258. In other words, Plaintiff provided funds to purchase the Product; he did not steal the Product nor did the retailer where he purchased the Product steal it. This logical view of the facts is far from conclusory or mere speculation.

### III. Conclusion

For the foregoing reasons, the Court should deny the Motion to Dismiss in its entirety. To the extent the Court determines that the pleadings are deficient in any respect, Plaintiff respectfully requests leave to amend.

---

[3] *Earls v. Condor Capital Corp.*, 2001 WL 1188248 (Conn. Super. Ct. Aug. 30, 2001) (request for "safe and reliable" transportation is particular purpose); *Freeman v. Hubco Leasing, Inc.*, 324 S.E.2d 462 (Ga. 1985) (the ordinary and particular purpose of a car are the same); *Thomas v. Ford Motor Credit Co.*, 429 A.2d 277 (Md. Ct. Spec. App. 1981), *questioned by Ford Motor Co. v. Gen. Accident Ins. Co.*, 779 A.2d 362 (Md. 2001); *Nelson v. Wilkins Dodge, Inc.*, 256 N.W.2d 472 (Minn. 1977) (driving car on highways at high speeds is particular purpose); *Stickney v. Fairfield's Motors, Inc.*, 9 U.C.C. Rep. Serv. 236 (N.H. Super. Ct. 1970). *See also Tornow v. Stanford Bros., Inc.*, 2005 WL 4135450, at *6 (Mich. Cir. Ct. Apr. 21, 2005) (implied warranty of fitness may include warranty that vehicle was fit to drive at seventy miles per hour or higher speeds); *Karczewski v. Ford Motor Co.*, 382 F. Supp. 1346 (N.D. Ind. 1974) ("particular purpose of a passenger automobile is to drive on the public streets and highways safely without uncontrolled and unsafe behavior"), *aff'd*, 515 F.2d 511 (7th Cir. 1975).
[4] *Reynolds v. Preferred Mut. Ins. Co.*, 49 Mass. App. Dec. 97 (Mass. Dist. Ct. 1972).
[5] *Towel Mach. Serv. Corp. v. Am. Unif. Rental, Inc.*, 7 U.C.C. Rep. Serv. 162 (N.Y. Civ. Ct. 1970).
[6] *Mintz v. Daimler-Benz of N. Am., Inc.*, 341 N.Y.S.2d 781 (N.Y. Civ. Ct. 1973).

Dated: July 25, 2023                          Respectfully submitted,

OF COUNSEL:                                   FARNAN LLP

Dennis C. Reich                               */s/ Michael J. Farnan*
REICH & BINSTOCK LLP                          Brian E. Farnan (Bar No. 4089)
4265 San Felipe, Suite 1000                   Michael J. Farnan (Bar No. 5165)
Houston, TX 77024                             919 N. Market St., 12th Floor
Phone: (713) 622-7271                         Wilmington, DE 19801
Fax: (713) 623-8724                           Phone: (302) 777-0300
dreich@reichandbinstock.com                   Fax: (302) 777-0301
                                              bfarnan@farnanlaw.com
Steffan T. Keeton                             mfarnan@farnanlaw.com
THE KEETON FIRM LLC
100 S Commons, Ste. 102                        *Attorneys for Plaintiff and the Classes*
Pittsburgh, PA 15212
1-888-412-5291
stkeeton@keetonfirm.com

Michael A. Mills
THE MILLS LAW FIRM
8811 Gaylord Drive
Suite 200
Houston, TX 77024
Phone: (832) 548-4414
Fax: (832) 327-7443
mickey@millsmediation.com

8