**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| KEITH FISHLOCK, on behalf of himself and all others similarly situated, | |
| Plaintiff, | C.A. No. 23-522-SB |
| v. | |
| GLOBAL PLASMA SOLUTIONS, INC., | |
| Defendant. | |

**DEFENDANT GLOBAL PLASMA SOLUTIONS, INC.'S ANSWERING BRIEF IN
<u>OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION</u>**

OF COUNSEL

MCGUIREWOODS LLP

Robert A. Muckenfuss (admitted *pro hac vice*)
Kelly A. Warlich (admitted *pro hac vice*)
Hannah K. Caison (admitted *pro hac vice*)
Fifth Third Center
201 North Tryon Street, Suite 3000
Charlotte, North Carolina 28202
(704) 343-2052
rmuckenfuss@mcguirewoods.com
kwarlich@mcguirewoods.com
hcaison@mcguirewoods.com

Addison E. Fontein (admitted *pro hac vice*)
2601 Olive Street, Suite 2100
Dallas, Texas 75201
(214) 932-6436
afontein@mcguirewoods.com

*Attorneys for Global Plasma Solutions, Inc.*

March 24, 2025

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Adam W. Poff (No. 3990)
Tammy L. Mercer (No. 4957)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
(302) 571-6600
apoff@ycst.com
tmercer@ycst.com
swilson@ycst.com

*Attorneys for Global Plasma Solutions, Inc.*

# TABLE OF CONTENTS

**Page**

INTRODUCTION .......................................................................................................... 1

NATURE AND STAGE OF PROCEEDINGS ............................................................ 1

LEGAL STANDARD .................................................................................................. 2

ARGUMENT ............................................................................................................... 3

    I.     Plaintiff has not established predominance under Rule 23(b)(3) ........................... 4

        A.     Plaintiff has not conducted the requisite choice of law analysis, mandating denial of the Motion. ................................................... 4

        B.     The putative class claims require individualized proof, making certification impossible. .............................................................. 6

               1.     Fraudulent Misrepresentation and Consumer Protection Statutes are not suited for class treatment. ................................... 6

               2.     Claims for Breach of the Implied Warranty of Merchantability are improper on a class wide basis....................................... 8

        C.     Plaintiff has failed to prove superiority by a preponderance of the evidence. ............................................................................... 10

        D.     Plaintiff has failed to prove ascertainability by a preponderance of the evidence. ................................................................................ 12

    II.    Plaintiff has failed to prove by a preponderance of the evidence the numerosity, typicality, and adequacy requirements of Rule 23(a). ..................... 14

        A.     Plaintiff has failed to prove numerosity by a preponderance of the evidence. ............................................................................... 15

        B.     Plaintiff has failed to prove typicality or adequacy by a preponderance of the evidence.................................................. 17

CONCLUSION ............................................................................................................ 19

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allen v. Ollie's Bargain Outlet, Inc.*,
  37 F.4th 890 (3d Cir. 2022) (Porter, J., concurring) ........................................12, 15

*Beck v. Maximus, Inc.*,
  457 F.3d 291 (3d Cir. 2006)...............................................................................3, 14, 17

*Carrera v. Bayer Corp.*,
  727 F.3d 300 (3d Cir. 2013)...............................................................................12, 14

*In re Citizens Bank, N.A.*,
  15 F.4th 607 (3d Cir. 2021) ................................................................................2, 3

*City Select Auto Sales, Inc. v. BMW Bank of N. Am., Inc.*,
  867 F.3d 434 (3d Cir. 2017)...............................................................................3

*Danvers Motor Co. v. Ford Motor Co.*,
  543 F.3d 141 (3d Cir. 2008)...............................................................................10

*Darisse v. Nest Labs, Inc.*,
  No. 5:14-cv-01363-BLF, 2016 WL 4385849 (N.D. Cal. Aug. 15, 2016) ................5

*In re Domestic Drywall Antitrust Litig.*,
  No. 13-MD-2437, 2017 U.S. Dist. LEXIS 135758 (E.D. Pa. Aug. 24, 2017)........11

*In re DVI, Inc. Sec. Litig.*,
  639 F.3d 623 (3d Cir. 2011)...............................................................................7

*East Tex. Motor Freight Sys., Inc. v. Rodriguez*,
  431 U.S. 395 (1977)............................................................................................18

*Ford v. Progressive Specialty Ins. Co.*,
  No. CV 21-4147, 2025 WL 705720 (E.D. Pa. Mar. 5, 2025).................................11

*Gonzalez v. Corning*,
  317 F.R.D. 443 (W.D. Pa. 2016), *aff'd*, 885 F.3d 186 (3d Cir. 2018), *as
  amended* (Apr. 4, 2018) ......................................................................................9

*In re Google, Inc. Cookie Placement Consumer Priv. Litig.*,
  No. 12-MD-2358, 2023 U.S. Dist. LEXIS 117696 (D. Del. July 10, 2023) ...........14

*Green v. Green Mountain Coffee Roasters, Inc.*,
  279 F.R.D. 275 (D.N.J. 2011)..............................................................................8

*Hargrove v. Sleepy's LLC*,
    974 F.3d 467 (3d Cir. 2020)..................................................................................12

*Harnish v. Widener Univ. Sch. of Law*,
    833 F.3d 298 (3d Cir. 2016)....................................................................................7

*Hayes v. Wal-Mart Stores, Inc.*,
    725 F.3d 349 (3d Cir. 2013).............................................................................12, 15

*In re Hydrogen Peroxide Antitrust Litig.*,
    552 F.3d 305 (3d Cir. 2008)....................................................................................2

*In re Insulin Pricing Litig.*,
    No. 17-699 (BRM) (RLS), 2024 WL 416500 (D.N.J. Feb. 5, 2024).........................5

*Ioengine, LLC v. Paypal Holdings, Inc.*,
    No. 18-452-WCB, 2022 U.S. Dist. LEXIS 129050 (D. Del. June 22, 2022) ..........13

*Johnston v. HBO Film Mgmt.*,
    265 F.3d 178 (3d Cir. 2001)..................................................................................14

*In re LifeUSA Holding*,
    242 F.3d 136 (3d Cir. 2001)..................................................................................11

*In re Lincoln Nat'l 2017 Coi Rate Litig.*,
    620 F. Supp. 3d 268 (E.D. Pa. 2022) ....................................................................16

*Marcus v. BMW of N. Am., LLC*,
    687 F.3d 583 (3d Cir. 2012)..........................................................................2, 14, 16

*Melnick v. TAMKO Bldg. Prods. LLC*,
    347 F.R.D. 79 (D. Kan. 2024).................................................................................8

*Mielo v. Steak 'N Shake Operations, Inc.*,
    897 F.3d 467 (3d Cir. 2018).........................................................................10, 15, 16

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    259 F.3d 154 (3d Cir. 2001), *as amended* (Oct. 16, 2001) ....................................6

*Niemann v. Rogers*,
    802 F. Supp. 1154 (D. Del. 1992)............................................................................5

*Ortez v. Morton*,
    No. 18-561-MN-CJB, 2019 U.S. Dist. LEXIS 53992, at *8 (D. Del. Mar. 29,
    2019) ....................................................................................................................15

*Pa. Employee, Benefit Tr. Fund v. Zeneca, Inc.*,
    710 F. Supp. 2d 458 (D. Del. 2010)........................................................................11

*Powers v. Lycoming Engines,*
    328 F. App'x 121 (3d. Cir. 2009) ....................................................................4, 9

*Reinig v. RBS Citizens, N.A.,*
    912 F.3d 115 (3d Cir. 2018)................................................................................6

*Reybold Grp., Inc. v. Chemprobe Techs., Inc.,*
    721 A.2d 1267 (Del. 1998) ................................................................................8

*Robert S. Garner v. Global Plasma Solutions, Inc.,*
    Civil No. 1:21-cv-00665-SB (D. Del.)..................................................1, 10, 13

*Russell v. Educ. Comm' for Foreign Med. Graduates,*
    15 F.4th 259 (3d Cir. 2021) ...............................................................................9

*In re Sch. Asbestos Litig.,*
    789 F.2d 996 (3d Cir. 1986)...............................................................................4

*In re Schering Plough Corp. ERISA Litig.,*
    589 F.3d 585 (3d Cir. 2009)........................................................................16, 17

*Stoneback v. ArtsQuest,*
    No. 12-cv-03287, 2013 U.S. Dist. LEXIS 86457 (E.D. Pa. June 19, 2013)............................7

*Tyson Foods, Inc. v. Bouaphakeo,*
    577 U.S. 442 (2016) ...........................................................................................4

*In re Valsartan, Losartan, and Irbesartan Prods. Liab. Litig.,*
    No. 19-2875 (RBK) (SAK), 2023 WL 1818922 (D.N.J. Feb. 8, 2023)....................................5

*In re Warfarin Sodium Antitrust Litig.,*
    391 F.3d 516 (3d Cir. 2004)..........................................................................5, 19

*Yarger v. ING Bank, FSB,*
    285 F.R.D. 308 (D. Del. 2012) ...............................................................6, 7, 9, 10

**Other Authorities**

Fed. R. Civ. P. 23 ......................................................................2, 4, 12, 14, 15, 16

Fed. R. Civ. P. 23(a) ........................................................................2, 3, 14, 19

Fed. R. Civ. P. 23(a)(1)...........................................................................14, 16

Fed. R. Civ. P. 23(a)(3)...................................................................................16

Fed. R. Civ. P. 23(b) ..............................................................................2, 3, 4

Fed. R. Civ. P. 23(b)(3).............................................................3, 4, 9, 12, 14, 16, 19

Fed. R. Evid. 901 ...................................................................................................................13

Fed. R. Evid. 901(a) ..............................................................................................................13

## INTRODUCTION

This Court already denied a mirror image of Plaintiff's Motion for Class Certification [D.I 68, 69] (the "Motion") in *Robert S. Garner v. Global Plasma Solutions, Inc.*, Civil No. 1:21-cv-00665-SB (D. Del.) ("*Garner*"). *See Garner* at D.I. 87, 88, 142, 143; *see also*, Decl. of Addison Fontein ("Fontein Decl.") Ex. A (Compare Report). The same outcome should result here. D.I. 37 at 1 ("Plaintiffs who recycle pleadings should expect the same results.") (Bibas, J.).

Plaintiff Keith Fishlock ("Fishlock") filed this putative class action claiming he purchased one of Defendant Global Plasma Solutions, Inc.'s ("GPS") Needlepoint Bipolar Ionization (NPBI™) air cleaning products ("GPS Device") in reliance on representations that he contends were false. D.I. 9. By way of the Motion, Plaintiff seeks to certify a class of numerous yet-to-be identified purchasers scattered across multiple states, each of whom made specific purchasing decisions based on their specific indoor air quality needs. D.I. 68. And the determination of each putative plaintiff's claim against GPS will turn on an individualized assessment of proof pertaining to each purchaser's (i) knowledge and sophistication; (2) interactions with GPS, if any; (3) reliance on the information they received, if any, and who provided such information; and, (4) the use of that information in making their purchasing decision. Even determining which states' laws will apply to the class's claims will require an extensive and detailed choice of law analysis—one that Plaintiff wholly failed to undertake. Just like this Court's determination in *Garner*, this assessment cannot be done on a class-wide basis. As a result, class certification is inappropriate here.

## NATURE AND STAGE OF PROCEEDINGS

Plaintiff filed this putative class action on May 15, 2023. D.I. 1. GPS moved to dismiss the complaint on June 6, 2023. D.I. 5. Plaintiff filed an amended complaint on June 27, 2023 (the "Amended Complaint"). D.I. 9. GPS moved to dismiss the Amended Complaint for failure to state a claim. D.I. 10. The Court dismissed most of Plaintiff's claims, with the exception of those for

fraudulent misrepresentation, violation of the DCFA, and breach of the implied warranty of merchantability. D.I. 37, 38. The Court further narrowed these claims to include only the following alleged representations: "(1) that [GPS] used independent testing, and (2) that ionizers are effective at stopping COVID." D.I. 37 at 4–5; D.I. 38. On March 10, 2025, GPS moved for summary judgment on Plaintiff's remaining claims. D.I. 73. Not only has Plaintiff failed to establish a case for fraud, but also, the evidence demonstrates that independent testing shows that GPS's technology does in fact reduce airborne SARs-CoV-2. D.I. 74. Nonetheless, on March 10, 2025, Plaintiff filed the instant Motion seeking certification of: (1) a multi-state class of "[a]ll purchasers of products manufactured or distributed by Global Plasma Solutions (GPS) and sold in Delaware, Colorado, Connecticut, Florida, Illinois, Massachusetts, Minnesota, New Jersey, New York, and Washington that use [NPBI™] that were purchased from March 9, 2020 through June 15, 2021"; and, (2) "a subclass consisting of Delaware purchasers of the NPBI devices for the same time period as the multi-state putative class." D.I. 68.

## LEGAL STANDARD

To obtain class certification, Plaintiff must *prove*, by a preponderance of the evidence that withstands "rigorous analysis" that the putative class's claims meet each of the prerequisites of Rule 23(a) and one of the subparts of Rule 23(b). *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 590 (3d Cir. 2012); *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 320 (3d Cir. 2008) ("[T]o certify a class the district court must find that the evidence more likely than not establishes each fact necessary to meet the requirements of Rule 23."); *In re Citizens Bank, N.A.*, 15 F.4th 607, 612 (3d Cir. 2021) ("Class certification is appropriate only if, after rigorous analysis, the District Court concludes that plaintiffs satisfy each and every element by a preponderance of the evidence.").

The four requirements of Rule 23(a) are "numerosity, commonality, typicality, and adequacy." *Beck v. Maximus, Inc.*, 457 F.3d 291, 294 n.1 (3d Cir. 2006). As to Rule 23(b), Plaintiff seeks certification under Rule 23(b)(3), which further requires him to prove predominance and superiority—that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Citizens Bank, N.A.*, 15 F.4th at 612. In seeking certification under Rule 23(b)(3), Plaintiff must also prove that the class is ascertainable such that "(1) the class is defined with reference to objective criteria; and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *City Select Auto Sales, Inc. v. BMW Bank of N. Am., Inc.*, 867 F.3d 434, 439 (3d Cir. 2017).

## ARGUMENT

Class certification should be denied for the same reasons this Court found in *Garner*:

> First, individual issues will likely predominate over common ones. *See* Fed. R. Civ. P. 23(b)(3). Whether someone relied on a statement is highly fact intensive. Second, Garner is a highly atypical buyer of a Global Plasma device, so he is unlikely to represent the class adequately. See Fed. R. Civ. P. 23(1)(3-4).

*See Garner*, D.I. 142 p. 10. So too, here. Plaintiff has failed to prove predominance, superiority, and ascertainability. Plaintiff cannot show that common questions of law or fact predominate over individual questions because he failed to conduct the requisite choice of law analysis for each class member and each of the putative class claims turn on elements that require individualized, and not class wide, proof. For these same reasons, Plaintiff cannot show that a class action is the superior method for fairly and efficiently adjudicating the claims. Nor can he prove that there is a reliable and administratively feasible mechanism for ascertaining class members. Instead, Plaintiff merely proposes a method for identifying class members that is refuted by the evidence.

Plaintiff has likewise failed to prove Rule 23(a)'s numerosity requirement. Plaintiff has not provided any evidence of any additional class members, let alone that the class is so numerous that joinder is impracticable. Moreover, Plaintiff's claims are not typical of the putative class claims of the proposed classes because there is substantial evidence that Plaintiff purchased the GPS device not in reliance on GPS's representations but to reduce dust in his home. Moreover, Plaintiff has an advanced medical background and led Covid-19 response efforts at a hospital, which subjects him to a unique defense apart from the putative class members. Because there is substantial evidence that Plaintiff's claims would be subject to unique defenses that would be a significant focus of the trial, his claims cannot be typical of the putative class claims. Plaintiff is not an adequate class representative for the same reasons. Accordingly, Plaintiff's Motion for Class Certification must be denied.

## I.    Plaintiff has not established predominance under Rule 23(b)(3).

This Court's analysis can begin and end with Plaintiff's failure to establish that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b). A "common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016).

### A.    Plaintiff has not conducted the requisite choice of law analysis, mandating denial of the Motion.

The predominance requirement of Rule 23(b)(3) is not met when a Plaintiff fails to conduct a choice of law analysis for a putative, multi-state class. *Powers v. Lycoming Engines*, 328 F. App'x 121, 124 (3d. Cir. 2009) ("A necessary precondition to deciding Rule 23 issues is a determination of the state whose law will apply."). A putative class must credibly demonstrate "that class certification does not present insuperable obstacles" in terms of choice of law. *In re*

*Sch. Asbestos Litig.*, 789 F.2d 996, 1010 (3d Cir. 1986). Delaware's choice of law rule is referred to as the "most significant relationship test," which "places considerable emphasis on the place where the injury occurred," which is to be applied to each putative class members' claims. *Niemann v. Rogers*, 802 F. Supp. 1154, 1156 n. 1 (D. Del. 1992). Even a cursory utilization of this test would show that permitting the putative class to proceed would result in the application of numerous states' laws. This is because the place of the injury, which is emphasized by Delaware's test, is likely where the putative plaintiff lives, purchased the GPS product, or installed the product. Thus, this Court would have to apply the laws of ten, if not more, different states, rendering class treatment unmanageable. *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 529 (3d Cir. 2004) ("In certification of litigation classes for claims arising under the laws of the fifty states, we have previously noted that the district court must determine whether variations in state laws present the types of insuperable obstacles which render class action litigation unmanageable.").

Because Plaintiff has not even attempted to engage in a choice of law analysis whatsoever—much less one regarding each of his claims—this Court should deny class certification. The putative class claims at issue in this case vary significantly from state to state. Courts in this Circuit frequently decline to certify multi-state classes that implicate various consumer protection statutes because of the variations between state law. *In re Insulin Pricing Litig.*, No. 17-699 (BRM) (RLS), 2024 WL 416500, at *48 (D.N.J. Feb. 5, 2024) (collecting cases). The same is true for breach of implied warranty of merchantability claims. *In re Valsartan, Losartan, and Irbesartan Prods. Liab. Litig.*, No. 19-2875 (RBK) (SAK), 2023 WL 1818922, at *58 (D.N.J. Feb. 8, 2023) ("numerous courts…deny certification of proposed multi-state implied warranty classes.") (collecting cases); *Darisse v. Nest Labs, Inc.*, No. 5:14-cv-01363-BLF, 2016 WL 4385849, at *12 (N.D. Cal. Aug. 15, 2016) (class certification denied because "[t]he fifty

states' laws on the implied warranties of merchantability . . . have significant differences regarding privity, notice, the availability of class actions, and the definition of merchantability"). This Court should come to the same conclusion here.

**B.    The putative class claims require individualized proof, making certification impossible.**

Also fatal to the Motion is that each of the putative class claims depend on an individualized assessment of proof. *Reinig v. RBS Citizens, N.A.*, 912 F.3d 115, 127 (3d Cir. 2018) (holding that the "predominance requirement is met only if the district court is convinced that the essential elements of the claims brought by a putative class are capable of proof at trial through evidence that is common to the class rather than individual to its members"). As noted above, the differences in applicable state laws and their burdens of proof require an impermissible, individualized analysis of the class members' claims. But even assuming Delaware law applied to the putative class claims for fraudulent misrepresentation, violation of the DCFA and breach of the implied warranty of merchantability, this Court would still be required to perform individualized proof assessments for each putative plaintiff, rendering this lawsuit unsuitable for class adjudication. *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 172 (3d Cir. 2001), *as amended* (Oct. 16, 2001) ("If proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable."). And, this Court has already rejected this identical request in *Garner*. D.I. 142 p. 10 ("…when the evidence required to show an essential element of a claim differs between plaintiffs, a court cannot certify a 23(b)(3) class.)

1.    Fraudulent Misrepresentation and Consumer Protection Statutes are not suited for class treatment.

6

Essential to the putative class's claims for fraudulent misrepresentation and those arising under multi-state consumer protection statutes is the element of justifiable reliance,[1] which Plaintiff failed to address. The reason for such failure is obvious—"[n]umerous courts have denied class certification of claims where reliance is an element based on their conclusion that proving reliance would cause individual issues to predominate over common questions." *Garner*, D.I. 142 p. 10 ("…the first part of this order shows both the fact-bound challenge of proving reliance and the individualized nature of identifying a false representation.); *Yarger*, 285 F.R.D. at 327–28 (putative class plaintiffs did not meet predominance requirement as to their common law fraud claims since reliance requires individualized proof); *In re DVI*, *Inc. Sec. Litig.*, 639 F.3d 623, 649 (3d Cir. 2011) (putative class plaintiffs did not meet predominance requirement as to their securities fraud claim because reliance requires individualized proof); *Stoneback v. ArtsQuest*, No. 12-cv-03287, 2013 U.S. Dist. LEXIS 86457, at *53 (E.D. Pa. June 19, 2013) (putative class plaintiffs did not meet predominance requirement as to their fraud claims because "plaintiffs would have to show that each class member justifiably relied on defendants' alleged misrepresentation" and, thus, "individual issues predominate").

In an attempt to meet his predominance burden as to the putative class's fraudulent misrepresentation and consumer protection claims, Plaintiff contends that each representation regarding GPS's technology on which the putative class is alleged to have relied, even those made by third parties, originated from GPS. *See e.g.*, D.I. 69, at 9–10 ("The marketing and messaging

---

[1] *Yarger v. ING Bank, FSB*, 285 F.R.D. 308, 327 (D. Del. 2012) (common law fraud under Delaware law requires "(1) a false representation of (or concealment of) a fact; (2) defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth; (3) an intent to induce the plaintiff or to cause plaintiff to refrain from acting; (4) *plaintiff's action or inaction taken in justifiable reliance upon the representation*; and (5) damage to plaintiff as a result of such reliance" (emphasis added)).

for the Products originates with GPS and is distributed for rebroadcasting throughout the entire distribution chain. This produces a uniform message for every distributor and sales representative…. By rebroadcasting GPS' content, all of the distribution points in the distribution chain merely act as radio towers to present GPS' common message."). However, even if such statements could be properly attributed to GPS, they say nothing about reliance. [2] Indeed, "reliance is nearly always an individualized question, requiring case-by-case determinations of what effect, if any, the misrepresentation had on plaintiffs' decision-making." *Harnish v. Widener Univ. Sch. of Law*, 833 F.3d 298, 309–10 (3d Cir. 2016). Just like in *Garner*, Plaintiff's claims require individualized proof such that certification is inappropriate, here:

> Garner argues that I can logically infer reliance and that, even if not, the other elements of fraud are shared and predominate. D.I. 101 at 6–8. I disagree. But the first part of this opinion shows both the fact-bound challenge of proving reliance and the individualized nature of identifying a false representation. Global Plasma said different things to different people at different times. And the truth of those statements differed over time. It is hard enough to figure out whether one plaintiff relied on a false representation, and if so, which one. Yet Garner wants to certify a class of plaintiffs who bought ionizers between March 9, 2020, and June 25, 2021. D.I. 87. This sweeps in too many potentially false representations and too many differing theories of reliance.

*See Garner*, D.I. 142 p. 10.

> 2.    Claims for Breach of the Implied Warranty of Merchantability are improper on a class wide basis.

---

[2] Even if reliance could be cobbled together through an allegation of uniform messaging, Plaintiff provides no evidence in support of this argument. While Plaintiff cites to various documents in support of an alleged "uniform message" that "originate[d] with GPS," none of these documents reflect Plaintiff's theory. As just one example, in citing to "exhibit 48," Plaintiff alleges "Thrivaire, Yale Mechanical and Carrier West make similar representations which originate from GPS." D.I. 69, at 9. But exhibit 48 is devoid of any evidence that third-party marketing and the statements therein originated from GPS. Nor does Plaintiff present any other evidence that third-party marketing originated from GPS such that the putative class plaintiffs could share a uniform reliance. Mot. Ex. 48.   Plaintiff is not entitled to class certification on his fraudulent misrepresentation or state-law consumer protection claims.

Given the highly individualized analysis required for state law breach of implied warranty of merchantability claims, they are rarely certified for class treatment. *See e.g.*, *Melnick v. TAMKO Bldg. Prods. LLC*, 347 F.R.D. 79, 103 (D. Kan. 2024) (denying class certification for breach of the implied warranty of merchantability as "the question of notice will be highly individualized"). Plaintiff is without evidence of predominance because fundamental elements of this claim—proximate cause and notice—require individualized proof.[3] *See, e.g.*, *Green v. Green Mountain Coffee Roasters, Inc.*, 279 F.R.D. 275, 285 (D.N.J. 2011) ("Even if the purported defect has manifested in all of the brewers purchased within the class period, the Court will have to make individual inquiries as to the cause and extent of the defect.").

As illustration, for each putative class member, the fact finder will be required to examine whether the cause of the alleged injury was the alleged defect in effectiveness against SARS-CoV-2 or some other cause, such as improper use of the product. *Cf. Gonzalez v. Corning*, 317 F.R.D. 443, 520 (W.D. Pa. 2016), *aff'd*, 885 F.3d 186 (3d Cir. 2018), *as amended* (Apr. 4, 2018) (noting that even if plaintiffs could prove that a product had the same defect, they could not establish that the defect was "the cause of the harm suffered by all (or even most or many) members of the proposed four-state class"). Similarly, an individualized factual inquiry would be required to determine whether each class member provided notice of a defect to GPS and whether such notice was sufficient. *Powers*, 272 F.R.D. at 425 (noting the "need for individual inquiry" because "class members who purchased the aircraft or engines in states requiring notice of breach as a prerequisite to suit must establish that they provided notice" and "what suffices as notice is not the same among

---

[3] *Reybold Grp., Inc. v. Chemprobe Techs., Inc.*, 721 A.2d 1267, 1269 (Del. 1998) (providing that a successful breach of implied warranty of merchantability claim requires a plaintiff to establish that (1) a merchant sold him a good; (2) the good was not merchantable at the time of the sale; (3) plaintiff was damaged; (4) the damage was caused by the breach of the warranty of merchantability; and (5) the seller has notice of the damage).

the states"). Plaintiff does not address any of this, despite his burden. Accordingly, this Court should deny class certification as to all of Plaintiff's remaining claims because individualized issues of fact predominate.

### C.    Plaintiff has failed to prove superiority by a preponderance of the evidence.

Rule 23(b)(3) requires Plaintiff to show that "a class action would be superior to other available methods for fairly and efficiently adjudicating the controversy." *Russell v. Educ. Comm' for Foreign Med. Graduates*, 15 F.4th 259, 266 (3d Cir. 2021). As an initial matter, courts consistently find the superiority requirement unmet where, as here, individualized issues predominate over common issues. *Yarger*, 285 F.R.D. at 329 ("The fourth factor counsels strongly against finding that a class action is a superior means for adjudicating…fraud" claims.). This is because "the multitude of individualized issues present in proving reliance would entail complicated mini-litigations focusing on the individual class members' knowledge and state of mind. It would be neither more fair nor more efficient to proceed with these claims as a class action." *Id.*; *Danvers Motor Co. v. Ford Motor Co.*, 543 F.3d 141, 149 (3d Cir. 2008) ("it would be neither more fair nor more efficient to proceed with this matter as a class action" because of "individualized issues").

Putting aside the lack of predominance, which is fatal to his superiority arguments, Plaintiff has also failed to analyze: (1) the interest of individual class members in controlling the prosecution of the action, (2) the extent of litigation commenced elsewhere by class members, (3) the desirability of concentrating claims in a given forum, and (4) the management difficulties likely to be encountered in pursuing the class action. *Danvers Motor Co.*, 543 F.3d at 149.

First, Plaintiff has put forth no evidence regarding any of the class members. Plaintiff assumes—without any evidence—that all putative class plaintiffs purchased GPS's products between March 2020 and June 2021 for one reason: SARS-CoV-2 efficacy. D.I. 69, at 18. Plaintiff

fails to consider any other possibility. Yet, GPS was founded in 2008 and enjoyed significant recognition and success in the indoor air quality industry long before the SARS-CoV-2 virus and the COVID-19 pandemic. *Garner*, D.I. 83 ¶¶ 4, 13–14. Thus, while some putative class plaintiffs may seek to pursue an action premised on SARS-CoV-2 efficacy, others have purchased and will continue to purchase GPS's products for other reasons, and be ill-served by participating in this lawsuit focused on SARS-CoV-2 efficacy. Plaintiff's unsupported assumptions cannot displace the superiority requirement. *Mielo v. Steak 'N Shake Operations, Inc.*, 897 F.3d 467, 484 (3d Cir. 2018) (a court must make factual findings by a preponderance of the evidence and "[t]o make such a determination, a court must be presented with evidence that would enable the court to do so without resorting to mere speculation").

Next, Plaintiff has provided no reason—and no logical one exists—as to why members of the multi-state class would prefer to adjudicate their claims in Delaware as opposed to their home state where the alleged injury is most likely to have occurred. *Cf. Pa. Employee, Benefit Tr. Fund v. Zeneca, Inc.*, 710 F. Supp. 2d 458, 472 (D. Del. 2010) (noting that the forum with the most significant relationship to a fraudulent misrepresentation claim is the one where the plaintiff "relied upon the alleged misrepresentations by buying [the product]"). Plaintiff has presented no evidence of any need to concentrate the putative class claims in this forum, let alone that the proposed out of state class members prefer to litigate in Delaware.

Moreover, for all of the reasons outlined above, this case will be unmanageable as a class action because of the highly individualized inquiries required by the varying laws of numerous states. *Ford v. Progressive Specialty Ins. Co.,* No. CV 21-4147, 2025 WL 705720, at *23 (E.D. Pa. Mar. 5, 2025) (denying class certification where action raised "far too many factual and legal differences between claims for it to be any more manageable as a class action than otherwise"); *In*

*re LifeUSA Holding*, 242 F.3d 136, 148 n.13 (3d Cir. 2001) (finding that an "application of differing state laws would make trying the plaintiffs' claims in a class action a thoroughly unwieldy endeavor" and "make it impossible to conclude that this class action is superior to alternative means of adjudication"); *In re Domestic Drywall Antitrust Litig.*, No. 13-MD-2437, 2017 U.S. Dist. LEXIS 135758, at *48–49 (E.D. Pa. Aug. 24, 2017) (holding that "variation in state law" defeated superiority requirement). Plaintiff has simply failed to prove by a preponderance of the evidence that a class action is the superior method for adjudicating the putative class claims.

### D.    Plaintiff has failed to prove ascertainability by a preponderance of the evidence.

"Ascertainability mandates a rigorous approach at the outset because of the key roles it plays as part of a Rule 23(b)(3) class action lawsuit." *Carrera v. Bayer Corp.*, 727 F.3d 300, 307 (3d Cir. 2013) ("If a class cannot be ascertained in an economical and administratively feasible manner, significant benefits of a class action are lost."); *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 355 (3d Cir. 2013) ("[A]scertainability is important because it eliminates serious administrative burdens . . . by insisting on the easy identification of class members; allows for the best notice practicable, and thereby protects absent class members; and protects defendants by clearly identifying individuals to be bound by the final judgment."). To establish ascertainability, Plaintiff must show: "(1) the class is defined with reference to objective criteria, and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Hargrove v. Sleepy's LLC*, 974 F.3d 467, 469–70 (3d Cir. 2020).

Plaintiff has failed to prove by a preponderance of the evidence that there is a reliable and administratively feasible mechanism for identifying putative class members. This is evidenced by his failure to identify even one putative class member other than himself. Instead, Plaintiff relies on two documents to argue that "[c]lass members can be easily identified using GPS' records"

because "GPS knows who purchased the Products." D.I. 69, at 20. Yet, these documents—one showing Sales by Customer and the other, an irrelevant e-mail exchange—neither support Plaintiff's contentions that class members are easily identifiable, nor that GPS knows the end users who purchased its products.[4] D.I. 69, at 20 n.15; D.I. 71, Ex. 38. As Plaintiff acknowledges, GPS primarily sells its products to authorized manufacturer representatives who in turn sell GPS's products to end users. *Garner*, D.I. 96 ¶ 4. GPS has occasionally sold products directly to friends, family, and other individuals with a preexisting relationship with GPS and a handful of commercial customers, but GPS does not generally sell products directly to end users. *Id.* GPS maintains information on its sales to manufacturer representatives but does not generally maintain information on the end users to whom the manufacturer representatives ultimately sell the products. *Id.* ¶ 5. Accordingly, Plaintiff's suggestion that these documents identify end user purchases (i.e., would be putative class members) is incorrect.

It is undisputed that the "Sales by Customer" document only identifies the authorized manufacturer representatives to whom GPS sold its products, individuals affiliated with GPS to whom GPS sold products directly, and a limited number of commercial customers to whom GPS sold products directly. *See id.* ¶¶ 4–5. Perhaps most illustrative is the fact that not even Plaintiff or the entity from which he purchased his GPS device is identified on this document. This alone

---

[4] Additionally, these documents are inadmissible because: (1) they have not been authenticated; and (2) Plaintiff has not provided any evidence as to the author or origin of the documents. *Allen v. Ollie's Bargain Outlet, Inc.*, 37 F.4th 890, 906 (3d Cir. 2022) (Porter, J., concurring) ("Simple logic indicates, and statutory text confirms, that Rule 23 is not satisfied when the evidence proffered would not be admissible as proof of anything. Rigorous analysis and statutory text demand nothing less than admissible evidence at the time of certification." (citations and quotation marks omitted)); *Ioengine, LLC v. Paypal Holdings, Inc.*, No. 18-452-WCB, 2022 U.S. Dist. LEXIS 129050, at *10–11 (D. Del. June 22, 2022) ("Rule 901 provides that to authenticate a document, 'the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.'" (quoting Fed. R. Evid. 901(a))).

should support that Plaintiff has not presented a reliable and administratively feasible mechanism for identifying end user purchasers that fall within the proposed classes. D.I. 71, Ex. 38.

The only other document on which Plaintiff relies to establish ascertainability is an email exchange between GPS and Varitec Solutions, one of GPS's manufacturer representatives. D.I. 69, 20 n.15; D.I. 71, Ex. 74. While this e-mail memorializes Varitec Solutions' purchase of GPS products on behalf of a specific customer, any reference to said customer is made generically, without any identification of the customer. *See* D.I. 71, Ex. 74 at GPSDE_0200190487 ("customer"), GPSDE_0200190485 ("My customer is mobilizing…."), GPSDE_0200190484 ("This leaves the customer…"). This e-mail does not identify any customer or end user. This e-mail does not establish that GPS knew the identity of this customer. And this e-mail certainly does not establish that the putative class members—i.e., purchasers of GPS's products—are easily ascertainable. Plaintiff has failed to establish ascertainability by a preponderance of the evidence. *Carrera*, 727 F.3d at 306 ("A plaintiff may not merely propose a method of ascertaining a class without any evidentiary support that the method will be successful."); *In re Google, Inc. Cookie Placement Consumer Priv. Litig.*, No. 12-MD-2358, 2023 U.S. Dist. LEXIS 117696, at *23 (D. Del. July 10, 2023) (denial of class certification where plaintiff could not show that the class was ascertainable). And without evidence of a reliable and administratively feasible mechanism for identifying class members, class certification must be denied.

## II.    Plaintiff has failed to prove by a preponderance of the evidence the numerosity, typicality, and adequacy requirements of Rule 23(a).

Because Plaintiff has failed to establish the requirements of Rule 23(b)(3), the Motion is ripe for denial such that this Court need not assess whether Plaintiff has proven the requirements of Rule 23(a) (he has not). Even assuming *arguendo* that this analysis should proceed, class certification should still be denied because the Rule 23(a) requirements remain unmet. *Beck*, 457

F.3d at 294 n.1 (Rule 23(a) requires the party seeking class certification to prove numerosity, commonality, typicality, and adequacy).

A.    **Plaintiff has failed to prove numerosity by a preponderance of the evidence.**

Rule 23(a)(1) requires Plaintiff to prove that "the putative class is so numerous that joinder of all members is impracticable." *Johnston v. HBO Film Mgmt.*, 265 F.3d 178, 184 (3d Cir. 2001). "Critically, numerosity—like all Rule 23 requirements—must be proven by a preponderance of the evidence." *Marcus*, 687 F.3d at 595. "[A] plaintiff in this circuit can generally satisfy Rule 23(a)(1)'s numerosity requirement by establishing that the potential number of plaintiffs exceeds 40." *Mielo*, 897 F.3d at 486. But "[t]his is a guidepost: showing the number of class members exceeds forty is neither necessary nor always sufficient." *Allen v. Ollie's Bargain Outlet, Inc.*, 37 F.4th 890, 896 (3d Cir. 2022); *Ortez v. Morton*, No. 18-561-MN-CJB, 2019 U.S. Dist. LEXIS 53992, at *8 (D. Del. Mar. 29, 2019) (Third Circuit recognizes general rule that "(1) classes of 20 or fewer are usually insufficiently numerous; (2) a class of 41 or more is usually sufficiently numerous and (3) classes of between 21 and 40 members are given varying treatment"). "[A] party seeking class certification must…be prepared to prove that there are in fact sufficiently numerous parties…" *Hayes*, 725 F.3d at 357. "[M]ere speculation as to the number of class members—even if such speculation is a bet worth making—cannot support a finding of numerosity." *Mielo*, 897 F.3d at 486.

Plaintiff contends that "numerosity is satisfied because GPS claims to have over 250,000 installations, with hundreds of buyers in the proposed class period." D.I. 69, at 15.[5] Plaintiff bases

---

[5] The documents on which Plaintiff relies do not support this statement and are insufficient to establish numerosity. In addition, the documents are unauthenticated and constitute hearsay and, therefore, are inadmissible. *Allen*, 37 F.4th at 906 (Porter, J., concurring) ("Simple logic indicates, and statutory text confirms, that Rule 23 is not satisfied when the evidence proffered would not be admissible as proof of anything. Rigorous analysis and statutory text demand nothing less than admissible evidence at the time of certification." (citations and quotation marks omitted)).

his assertion on a soundbite from an interview of Kevin Boyle, GPS's Vice President of Products and Marketing in which he stated that GPS's technology has been installed in "more than 250,000 locations" since it was founded in 2008 D.I. 71, Ex. 56. Plaintiff's argument for numerosity is nothing more than conjecture, in which he surmises that because GPS's technology has been installed in "more than 250,000 locations" then there must be more than 100 putative class members. D.I. 71, Ex. 56. Plaintiff's reliance on GPS's lifetime sales since 2008 does not support the assertion that the proposed multi-state class, which allegedly purchased GPS products during a discrete 15-month period, meets the numerosity requirement. *Mielo*, 897 F.3d at 486 (numerosity requirement unmet where plaintiffs presented "evidence—indicating that there are between 14.9 million to 20.9 million persons with mobility disabilities who live in the United States" to suggest that "at least 40 of those individuals would have experienced access violations").

Likewise, Plaintiff failed to establish numerosity as to his proposed subclass of Delaware purchasers. *In re Lincoln Nat'l 2017 Coi Rate Litig.*, 620 F. Supp. 3d 268, 297 (E.D. Pa. 2022) (any subclass "must independently meet the requirements of Rule 23"). Plaintiff wholly fails to address the numerosity of his proposed subclass. Even if he had provided sufficient evidence to establish the numerosity of his proposed multi-state class (he has not), that evidence would not be sufficient to establish the numerosity of his proposed subclass of Delaware purchasers. *Marcus*, 687 F.3d at 595 ("When a plaintiff attempts to certify both a nationwide class and a state-specific subclass, as [Plaintiff] did here, evidence that is sufficient to establish numerosity with respect to the nationwide class is not necessarily sufficient to establish numerosity with respect to the state-specific subclass."). Where "the only fact with respect to numerosity proven by a preponderance of the evidence is that [Plaintiff] himself is a member of the proposed class… then Rule 23(a)(1) obviously has not been satisfied." *Id.* at 597 (quotations and brackets omitted). So too, here.

16

**B.** **Plaintiff has failed to prove typicality or adequacy by a preponderance of the evidence.**

As to the final class certification requirements, Plaintiff has failed to show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class," as required by Rule 23(a)(3), or that he can "fairly and adequately protect the interests of the class," as required by Rule 23(b)(3). *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 602 (3d Cir. 2009) ("Because of the similarity of the typicality and adequacy inquiries, certain questions— like whether a unique defense should defeat class certification—are relevant under both."). As alleged, Plaintiff's claims arise from the purchase of a GPS device to clean the air of SARS-CoV-2 in a residential home. D.I. 9 ¶¶ 160–62. Thus, the putative class complaint does not account for commercial purchasers or those who purchased GPS devices to address issues other than SARS-CoV-2 for which GPS's NPBI$^{TM}$ technology is utilized, whether odors, airborne pathogens, particle or pollution reduction, or some other purpose. Plaintiff fails to even specify the type of device(s) purchased by each putative class plaintiff, much less whether the device was new, bought second hand, or altered in any way.

Plaintiff cannot establish typicality or adequacy for the additional reason that each putative plaintiff's claims arose from unique circumstances that implicate specific defenses and different, potentially responsible, third parties. *Schering Plough*, 589 F.3d at 598; *Beck*, 457 F.3d at 297 ("Other courts of appeal emphasize, as do we, the challenge presented by a defense unique to a class representative—the representative's interests might not be aligned with those of the class, and the representative might devote time and effort to the defense at the expense of issues that are common and controlling for the class. A class representative should not be permitted to impose such a disadvantage on the class."). This is because each putative plaintiff received different representations from different entities at different times, ultimately resulting in their purchase of a

GPS product. *See Garner*, D.I. 142 p. 10 ("Global Plasma said different things to different people at different times. And the truth of those statement *differed* over time. It is hard enough to figure out whether one plaintiff relied on a false representation, and if so, which one. Yet Garner wants to certify a class of plaintiffs…. This sweeps in too many potentially false representations…").

For example, Plaintiff testified that he first learned about GPS from his HVAC servicer, which described GPS's technology as a "high-quality solution for improved indoor air quality" and allegedly "mentioned the website that GPS hosted at the time." Fontein Decl. Ex. B (Keith Fishlock Dep. Tr.) ("Fishlock Dep.") at 42:24–43:5. Yet, Plaintiff has not put forth evidence to establish that it was GPS's representations on which he specifically relied. Instead, Plaintiff alleged "there were several statements pretty much permeating the [i]nternet that the device killed COVID very effectively and it was also effective in cleaning the air, and it was also effective at killing other microorganisms as well." *Id.* at 44:25-45:5. The unique, alleged representations Plaintiff claims that he relied upon will be different than those of the putative plaintiffs, especially in light of GPS's vast distribution network that generally does not sell direct to end-users. As such, the putative class claims will be subject to unique defenses based on the varying representations that were made, and by whom they were made, if at all.

Plaintiff's background in health and SARS-CoV-2 also renders him an atypical and inadequate class representative. He also led the Covid-19 response at the hospital where he works, and was responsible for designing the fundamental plan to manage staff exposure to, and protection from Covid-19. *Id.* at 12:18-23. This experience is not typical and sets him apart from any putative class member such that his experience and interests are not aligned with the proposed class. Because Plaintiff has a background in Covid-19 response efforts, he may be unable to overcome defenses or legal theories that others could, such as whether he *justifiably* relied on the

representations he alleges GPS made. Plaintiff should not be permitted to impose this disadvantage on the putative class.

Plaintiff also does not assert an injury that would be typical of, or adequately represent any putative class. *East Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) ("[A] class representative must. . . 'possess the same interest and suffer the same injury' as the class members."). While Plaintiff asserts claims arising from alleged representations regarding SARS-CoV-2 efficacy, such representations are not the root cause of any alleged injury. Plaintiff did not turn off the GPS Device because he thought it was defective in cleaning the air of SARS-CoV-2, but rather, because he thought the GPS Device was "possibly" the cause of his respiratory distress, and he did not detect a visible reduction in dust particles at his home. Fishlock Dep. at 54:5-55:15. These reasons have nothing to do with the GPS Device's reduction of airborne SARS-CoV-2. Accordingly, his purported injuries—which appear to be nonexistent—are distinct from any alleged injury of a putative class member such that Plaintiff's representation of a class may well work against the class. *Warfarin*, 391 F.3d at 531 ("The typicality requirement is designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals."). Plaintiff's claims are neither typical nor adequate to those of the proposed class, such that he could fairly represent their claims. Class certification must be denied.

## CONCLUSION

Plaintiff has failed to prove by a preponderance of the evidence the predominance, superiority, and ascertainability requirements of Rule 23(b)(3) or the numerosity, typicality, and adequacy requirements of Rule 23(a). Plaintiff's failure to prove each of these requirements independently mandates denial of his Motion for Class Certification. Accordingly, GPS respectfully requests that the Court deny Plaintiff's Motion for Class Certification.

OF COUNSEL

MCGUIREWOODS LLP

Robert A. Muckenfuss (admitted *pro hac vice*)
Kelly A. Warlich (admitted *pro hac vice*)
Hannah K. Caison (admitted *pro hac vice*)
Fifth Third Center
201 North Tryon Street, Suite 3000
Charlotte, North Carolina 28202
(704) 343-2052
rmuckenfuss@mcguirewoods.com
kwarlich@mcguirewoods.com
hcaison@mcguirewoods.com

Addison E. Fontein (admitted *pro hac vice*)
2601 Olive Street, Suite 2100
Dallas, Texas 75201
(214) 932-6436
afontein@mcguirewoods.com

*Attorneys for Global Plasma Solutions, Inc.*

March 24, 2025

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ Adam W. Poff
Adam W. Poff (No. 3990)
Tammy L. Mercer (No. 4957)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
(302) 571-6600
apoff@ycst.com
tmercer@ycst.com
swilson@ycst.com

*Attorneys for Global Plasma Solutions, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on March 24, 2025, a copy of the foregoing document

was served on the counsel listed below in the manner indicated:

### <u>BY EMAIL</u>

> Brian E. Farnan
> Michael J. Farnan
> FARNAN LLP
> 919 North Market Street, 12th Floor
> Wilmington, DE 19801
> Email: bfarnan@farnanlaw.com
>          mfarnan@farnanlaw.com

> Dennis C. Reich
> REICH and BINSTOCK, LLP
> 4265 San Felipe, Suite 1000
> Houston, TX 77027
> Email: dreich@reichandbinstock.com

> Michael A. Mills, Esq.
> THE MILLS LAW FIRM
> 8811 Gaylord Drive, Suite 200
> Houston, TX 77024
> Email: mickey@millsmediation.com

> THE KEETON FIRM LLC
> Steffan T. Keeton, Esq.
> 100 S Commons, Ste. 102
> Pittsburgh, PA 15212
> Email: stkeeton@keetonfirm.com

> *Attorneys for Plaintiff Keith Fishlock*

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Adam W. Poff*
Adam W. Poff (No. 3990)
Tammy L. Mercer (No. 4957)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
(302) 571-6600

apoff@ycst.com
tmercer@ycst.com
swilson@ycst.com

*Attorneys for Global Plasma Solutions, Inc.*

March 24, 2025