IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

KEITH FISHLOCK, on behalf of himself and all others similarly situated,

*Plaintiff,*

v().

No. 23-cv-00522

GLOBAL PLASMA SOLUTIONS INC.,

*Defendant.*

---

Brian E. Farnan, Michael J. Farnan, FARNAN LLP, Wilmington, Delaware; Dennis C. Reich, REICH & BINSTOCK LLP, Houston, Texas.

*Counsel for Plaintiff*

Adam Wyatt Poff, Colin Aaron Keith, Samantha G. Wilson, YOUNG, CONAWAY, STARGATT & TAYLOR LLP, Wilmington, Delaware; Robert A. Muckenfuss, Elizabeth Zwickert Timmermans, Kelly A. Warlich, Hannah K. Caison, Addison E. Fontein, MCGUIREWOODS LLP, Charlotte, North Carolina.

*Counsel for Defendant*

---

**MEMORANDUM OPINION**

September 22, 2025

BIBAS, *Circuit Judge*, sitting by designation.

This is the second in a pair of cases about allegedly defective air purifiers. In the first, I granted partial summary judgment to Global Plasma and denied the plaintiff's motion to certify a class. *Garner v. Global Plasma Sols., Inc.*, 21-cv-00665, 2024 WL 4333133, at *1 (D. Del. Sep. 27, 2024). Though this case rests on the same general

theory, it involves a different plaintiff and different legal claims. Because of the legal and factual overlap between the cases, I grant partial summary judgment to Global Plasma for the same reasons that I did in *Garner*. But because this case involves claims that do not require the plaintiff to show reliance, I certify a statewide class.

### I. TWO CASES, JOINED AT THE HIP

Global Plasma "sells air purifiers that use ionization technology." *Garner*, 2024 WL 4333133, at *1. Ionization is a process that increases the size of particles, making them "large enough to either fall out of the air or be filtered better." *Id.* During the pandemic, Global Plasma pivoted to targeting pathogens, a new market for it. *Id.*

The Covid-centric marketing worked. But the product led to two lawsuits by the same law firm. Keith Fishlock saw one of Global Plasma's ads and bought an air purifier from it. D.I. 9 ¶¶ 158, 161. The ad allegedly promised to clean the air of Covid. D.I. 9 ¶¶ 162–63. That, Fishlock says, was a lie. He alleges three general theories of harm: (1) that the air purifiers don't clean the air of Covid, as promised; (2) that they are not superior to competitors' products, as promised; and (3) that they were not independently tested, as promised. D.I. 9 ¶ 53.

Another plaintiff, Brian Garner, brought a similar lawsuit. I dismissed many of Garner's claims. *Garner v. Global Plasma Solutions Inc.*, 590 F. Supp. 3d 738 (D. Del. 2022). I then granted partial summary judgment to Global Plasma and denied class certification shortly afterward. *Garner*, 2024 WL 4333133, at *1. Garner's sole remaining claim was based on the independent-testing theory. *Id.* at *5. And I did not certify a class because his claim required him to show reliance on a representation by Global Plasma, exposing him to an individualized defense. *Id.* at *4–5.

Fishlock sued Global Plasma with the same lawyers and a "nearly identical" complaint. *Fishlock v. Global Plasma Solutions Inc.*, 23-cv-00522, 2024 WL 1156719, at *1 (D. Del. Mar. 18, 2024). I dismissed most of his claims. *See id.* But, because his case was a bit different from the *Garner* case, more survived than in *Garner*. *Id.* at *3. The surviving claims are for fraudulent misrepresentation, breach of the implied warranty of merchantability, and violation of the Delaware Consumer Fraud Act. *Id.* at *2–3. All rest on two remaining theories: the Covid theory and the independent-testing theory. *Id.* at *2.

This motion for summary judgment and class certification is interlinked with *Garner*. Because Fishlock's case is so similar and additional expert discovery was not needed, I expedited the deadlines in his case for summary judgment and class certification. Global Plasma moved for summary judgment; Fishlock moved for class certification. D.I. 68, 73.

## II. AT SUMMARY JUDGMENT, THIS CASE RISES AND FALLS WITH ITS PREDECESSOR

Where Fishlock's claims overlap entirely with Garner's, I adopt the reasoning from my prior opinion and grant summary judgment to Global Plasma. *See generally Garner*, 2024 WL 4333133. I adopt my prior reasoning because no additional expert discovery was allowed in this case beyond what was allowed in *Garner*. D.I. 43, 81. And the theory that the air purifiers are ineffective against Covid rises and falls on that expert evidence. In his briefing, Fishlock rehashes the same arguments that Garner made. D.I. 83 at 17–20. So they face the same fate.

Thus, Fishlock's claims about whether the air purifiers are effective against Covid all stop here. But his claims that Global Plasma lied about independent testing can go forward, as they did in *Garner*. *Garner*, 2024 WL 4333133, at *4.

### III. UNLIKE IN *GARNER*, I CERTIFY AN OPT-IN STATE CLASS

But it is not all bad news for Fishlock. His claims that rest on the independent testing theory can go forward, as they did in *Garner*. *Garner*, 2024 WL 4333133, at *4. He brings these claims under common law fraudulent misrepresentation, implied breach of the warranty of merchantability, and the Delaware Consumer Fraud Act. Because two of these claims do not require proof of reliance, Fishlock's class-certification motion fares better than Garner's.

**A. I certify a class on the DCFA and implied warranty claims**

Garner's class-certification claim required him to show reliance on a misrepresentation by Global Plasma. That sunk his motion because he was an inadequate representative for the class; he was "subject to a unique defense that [was] likely to become a major focus of the litigation." *Beck v. Maximus, Inc.*, 457 F.3d 291, 301 (3d Cir. 2006). Global Plasma "deem[ed] Garner a budding professional plaintiff" and was clear that it planned to "press that argument to challenge his claim of reliance." *Garner*, 2024 WL 4333133, at *5. Fishlock does not fall into that trap. Though his fraudulent misrepresentation claim requires that he show reliance, neither the breach of the implied warranty of merchantability nor the Delaware Consumer Fraud Act claim does. *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983); *Reybold Grp., Inc. v. Chemprobe Techs., Inc.*, 721 A.2d 1267, 1269 (Del. 1998). That means I must

analyze each of the requirements of Rule 23(a) and 23(b)(3) to decide whether these two claims can proceed as a class action.

Though Fishlock originally argued for a nationwide class, he now defends only a Delaware-wide one. D.I. 88 at 5 n.2. Because that proposed class satisfies Rule 23(a) and 23(b)(3), I certify it.

### B. The proposed class satisfies Rule 23(a)

Rule 23(a) has four requirements. The proposed class must be "so numerous that joinder of all members is impracticable." Fed R. Civ P. 23(a)(1). There must be "questions of law or fact common to the class." *Id.* 23(a)(2). The proposed class representative must have claims or defenses "typical" of those of the rest of the class. *Id.* 23(a)(3). And the proposed class representative must "fairly and adequately protect the interests of the class." *Id.* 23(a)(4). All four requirements are met here.

*Numerosity*. As a general matter, "if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *In re Modafinil Antitrust Litig.*, 837 F.3d 238, 250 (3d Cir. 2016). Fishlock seeks to certify a class of plaintiffs who bought an air purifier between March 9, 2020 and June 15, 2021. D.I. 88 at 13. From March 1, 2020 through 2024, Global Plasma sold 4,760 air purifiers in Delaware. *Id.* Though that period is longer than the proposed class window, it would take a series of unrealistic assumptions to lower the number of buyers below 40. So Fishlock has shown by the preponderance of the evidence that there are at least 40 potential plaintiffs. *In re Modafinil*, 837 F.3d at 248.

*Commonality*. There is a single common question at the heart of this case: whether Global Plasma's testing was truly independent. So the plaintiff shares a

"question of fact or law" with the prospective class. *Newton v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.*, 259 F.3d 154, 183 (3d Cir. 2001). Global Plasma does not contest commonality.

*Typicality*. As with commonality, a plaintiff must meet only a "low threshold" to satisfy typicality. *Newton*, 259 F.3d at 183. "Factual differences will not defeat typicality *if* the named plaintiffs' claims arise from the same event or course of conduct that gives rise to the claims of the class members and are based on the same legal theory." *Danvers Motor Co., Inc. v. Ford*, 543 F.3d 141, 150 (3d Cir. 2008) (emphasis in original). It is used to "ensure[] the interests of the class and the class representatives are aligned." *Newton*, 259 F.3d at 182. Global Plasma makes three arguments against typicality, but each fails.

*First*, it does not matter that Fishlock bought the air purifier for residential, not commercial, use. D.I. 83 at 23. That is not a reason to suspect that he would fail to protect the interests of the class. Fishlock bought an air purifier and is suing because of false advertising, just like any other plaintiff who would join the class. *Second*, it does not matter that Fishlock has a background in health sciences or that he cannot identify a specific statement he relied on. *Id.* at 24. That is because he does not have to show reliance either under the Consumer Fraud Act or for his breach of warranty claim. *Stephenson*, 462 A.2d at 1074. *Third*, Global Plasma's speculation that Fishlock's injury is different from that of other plaintiffs does not move the needle either—his injury, like many other plaintiffs', would be at least monetary. D.I. 83 at 19.

*Adequacy.* Because "commonality and typicality criteria tend to merge into an analysis of adequacy of representation," and because Fishlock attests that he has been actively engaged with the management of this case, I find that Fishlock has also satisfied adequacy. *Newton*, 259 F.3d at 186; D.I. 70 at 3 ¶¶ 15–16.

### C. The proposed class satisfies Rule 23(b)(3)

Subsection 23(b)(3) imposes more onerous requirements. The common questions of law or fact must predominate over the individualized ones. Fed. R. Civ. P. 23(b)(3). A class action must be a superior mechanism to the others available to efficiently resolve the dispute. *Id.* And the class must be ascertainable. *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015).

*Predominance.* This prong asks whether liability is "capable of proof common to the class" and damages are "measurable on a class-wide basis by a 'common methodology.'" *Drummond v. Progressive Specialty Ins. Co.*, 142 F.4th 149, 156 (3d Cir. 2025) (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 30 (2013)). Here, both requirements are met. The central remaining questions are about what "independent testing" means and whether tests commissioned by Global Plasma count, which must be shown only once to settle the issue for all the claims. And the remaining questions under either the Consumer Fraud Act or the implied warranty of merchantability do not pose a great administrative load.

Under the Consumer Fraud Act, a plaintiff must show that: (1) the defendant engaged in a deceptive sales practice with the intention that somebody rely on it; (2) the plaintiff was a victim of that conduct; and (3) damages. *Teamsters Loc. 237 Welfare*

*Fund v. AstraZeneca Pharms. LP*, 136 A.3d 688, 693 (Del. 2016). As noted, a plaintiff need not show reliance. *Id.*

Each prong is at least partly susceptible to common proof. The first turns on Global Plasma's actions and is likely to constitute a great bulk of any fact-finding. Whether Global Plasma lied involves analyzing its contracts and arrangements with its testers as well as its advertising that touted independent testing. *See Garner*, 2024 WL 4333133, at *4. And whether the lie was made to induce reliance turns on who knew what when. By contrast, the identity of the victims and how they were harmed do not pose administratively difficult questions on a theory of harm based on "economic injury as a result of deceptive sales practices." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 315 (3d Cir. 1998) (distinguishing consumer-fraud cases based on monetary injury from those involving physical injuries for the purpose of predominance). And that is a theory of injury permitted under Delaware law. *Stephenson*, 462 A.2d at 1076 ("The most common and accepted standard [for damages under the Act] is the benefit of the bargain rule.").

The same logic applies to the breach-of-implied-warranty claim. To show a breach of implied warranty, a plaintiff must show that: (1) a merchant sold the goods; (2) the goods were defective when sold; (3) the goods injured the consumer; (4) the proximate cause of the injury was the defect; and (5) that the seller received notice of the injury. *Reybold Grp.*, 721 A.2d at 1269. Elements 2 through 4 are susceptible to common proof. That is because the implied warranty of merchantability is contractual in nature. *Cline v. Prowler Indus. Md., Inc.*, 418 A.2d 968, 975 (Del. 1980). So an economic

injury from buying something that was not what was advertised would be common among all plaintiffs. *See Johnson v. Hockessin Tractor, Inc.*, 420 A.2d 154, 158 (Del. 1980) (observing that economic injury can be alleged under a breach of implied warranty in Delaware).

True, the first and last prongs require a more individualized inquiry. But they could often be determined easily with copies of emails and receipts. So they would not predominate over the common questions.

*Superiority*. A class action is a superior vehicle to many individual trials because resolving the common questions will go a long way toward resolving this litigation. Three of the four factors enumerated in Rule 23(b)(3) point the same direction here. *See* Fed. R. Civ. P. 23(b)(3). The alternative to this class action would involve thousands of separate lawsuits, each repeating the same core issues, or no claims at all. So the individual members' interests, nature of the case, and value of handling it all in one forum support certification. *Id.* 23(b)(3)(A–C).

Still, one hurdle remains: manageability. *Id.* 23(b)(3)(D). Global Plasma says the class would be too hard to manage, mostly because identifying and notifying class members may be tricky. D.I. 83 at 18–20. This argument mirrors Global Plasma's ascertainability argument. Both questions resolve the same way.

*Ascertainability*. Global Plasma argues that the class cannot be ascertained because it tracks only sales to retailers, not to the end-users who make up the class. D.I. 83 at 18–20; *see, e.g.*, D.I. 71, Ex. 38.

9

That argument won the day in *Carrera v. Bayer Corp.*, 727 F.3d 300 (3d Cir. 2013). There, a class of dietary supplement buyers had only retail records. *Id.* at 308. The plaintiffs wanted to identify end-users using affidavits alone. *Id.* at 309. But that was not enough: The court demanded "further indicia of reliability" so that class membership was based on more than potential members' "say so." *Id.* at 306 (quoting *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593 (3d Cir. 2012)).

This case is different. The air purifiers have serial numbers. D.I. 102, Ex. 2. That is an objective way to test affidavits and weed out false claims. *See Byrd*, 784 F.3d at 163–65.

In cases where serial numbers were not enough, the claims had to do with swapped parts of a product, not the product itself. *Compare Kotsur v. Goodman Glob., Inc.*, 2016 WL 4430609, at *6 (E.D. Pa. Aug. 22, 2016) (serial numbers on parts could not confirm class), *with In re Philips Recalled CPAP, Bi-Level PAP, & Mech. Ventilator Prods. Litig.,* 347 F.R.D. 113, 125 (W.D. Pa. 2024) ("[T]here is a reliable and administratively feasible mechanism to determine who falls within the class: each device has a serial number[.]"). And asking for a serial number is simple. It avoids "mini-trials" and keeps things manageable. *Marcus*, 687 F.3d at 593.

So the class is ascertainable.

\* \* \* \* \*

This stage is where *Garner* and *Fishlock* diverge. Like Garner, Fishlock can proceed only individually on his fraudulent misrepresentation claim. But unlike Garner,

10

some claims here survive without needing to prove individual reliance, making them fit for classwide resolution. And with Rule 23 satisfied, the case moves ahead.